**KEITARO KARAMOTO v. BURNETT, District Director of Immigration.**

No. 7173.

Circuit Court of Appeals, Ninth Circuit.

Dec. 22, 1933.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and M. G. Gallaher, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

Appellant, a member of the Japanese race, a native and subject of Japan, and a laborer by occupation, was lawfully admitted to the territory of Hawaii, at Honolulu, in February, 1906, by virtue of a passport issued to him by the Japanese government, limited to Hawaii. Thereafter, in the same year, or in the following year, he came to the continental United States, disembarking at San Francisco, Cal., and, according to his testimony, landed without questioning or investigation by the immigration officials as to his right to come here. Since that time he has resided in the United States continuously, save for two visits, of one day each, to Tia Juana, Mexico, respectively, April 9, 1928, and January 20, 1929. Based upon this latter visit to Mexico and re-entry into the United States, deportation proceedings were instituted against him, and he was ordered deported on the grounds (1) that he entered the United States in violation of section 13 (a) of the Immigration Act of 1924 (8 USCA § 213 (a), in that he was not, at the time of his entry, in possession of an unexpired immigration visa; (2) that he entered the United States in violation of rule 8 of the Immigration Rules, which rule is based upon and is in accordance with the Presidential Proclamation of February 24, 1913, set forth in Matsuda v. Burnett (C. C. A.) 68 F.(2d) 272, this day decided.

After hearing, the immigration inspector at Los Angeles, Cal., recommended that the warrant of arrest be canceled and the deportation proceedings terminated, for the following reason: "While the alien in this case has made conflicting statements, it is found that he entered the United States many years

ago, the date of admission not having been ascertained. The alien it is believed has submitted sufficient proof to find that the charges contained in the warrant of arrest are not sustained and that the alien is not now deportable."

One of the "conflicting statements" referred to in that recommendation and finding, and the only material conflict in the record, relates to the year in which appellant entered the United States. At the time of his arrest, appellant stated that he came here in May, 1907, while at the hearing he testified that he came in May, 1906. The date of his entry is material, because, if he came in 1906, his entry was prior to the Presidential Proclamation of March 14, 1907, and therefore lawful; otherwise his entry was unlawful, and, as said by this court in Hurst v. Nagle, 30 F.(2d) 346, 347, "No domicile in the United States can be established by an alien whose original entry was unlawful."

Upon review, the Secretary of Labor, through the Board of Review, concluded that appellant had entered the United States in May, 1907, and was therefore subject to deportation. In its summary, the board said:

"At the hearing under the warrant of arrest when he was represented by counsel he stated that he did not remember having said that he came to the U. S. in May, 1907, and then claimed that he entered in May, 1906, that is, prior to the President's Proclamation of 1907; that his mention of the year 1907 was not a slip of the tongue, is indicated by the fact that he gave the year 1907 as the time of entry in response to three different questions. There is no record of his claimed landing at San Francisco in 1906 or 1907, and he states that he entered as a passenger but that he was not inspected by the Immigrant Inspector. He produces no evidence of any kind in support of his latter claim of having entered in 1906 except his passport which was issued for travel to Hawaii alone and bears no endorsement to show admission to the mainland at any time. If the alien came to the mainland of the U. S. before March 14, 1907, the Department would regard his residence now as lawful. If, on the contrary, he came to the mainland on or after that date, it must be held that he is here unlawfully and because of his recent departures from the U. S. and reentries without an immigration visa, is subject to deportation.

"A statement made before the issuance of the warrant of arrest at a time when he was more likely to be without knowledge as to the significance of dates as they relate to the President's Proclamation of 1907, lends itself more readily to belief. As stated previously he gave the date at that time in response to three different questions as 1907, and it is concluded therefore, particularly in the absence of any evidence to support his later claim to the contrary, that he entered the U. S. in May, 1907, and that he was not entitled to admission on his return to the United States from Mexico on January 20, 1929."

Thereafter the District Court denied appellant's petition for a writ of habeas corpus, followed by this appeal.

■■■ Without stating specifically the several contentions advanced by appellant in this court, we deem it sufficient to say that each argument is necessarily bottomed upon a false premise—lawful residence in the United States. The testimony is conflicting as to the date of appellant's entry into the United States. The administrative officers determined that date to be subsequent to the Presidential Proclamation of March 14, 1907, thus finding that appellant's entry was unlawful and accordingly that he acquired no rights during his residence here. There is evidence in the record to support the finding of the administrative officers, and it is therefore conclusive on this court. The refusal to accept appellant's testimony that he entered in 1906, after first testifying that he entered in 1907, was not arbitrary. See Ikeda v. Burnett (C. C. A.) 68 F.(2d) 276, decided December 13, 1933.

■ Appellant also contends "that the order of deportation is further illegal for the reason that it requires the deportation of Karamoto to Japan"; that appellant has not lived in Japan since 1905; that his last domicile outside the continental United States was Hawaii; and that deportation should be to that place. We are not unmindful of the hardship which will likely result to appellant by reason of deportation to his native country, from which he has been absent for nearly thirty years. However, section 20 of the Immigration Act of 1917 (8 USCA § 156) vests a broad discretion in the Secretary of Labor as to the country or place to which an alien shall be deported. It provides:

"The deportation of aliens provided for in this subchapter shall, at the option of the Secretary of Labor, be to the country whence they came or to the foreign port at which such aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which they embarked for such territory; or, if such aliens entered foreign contiguous territory

280

from the United States and later entered the United States, or if such aliens are held by the country from which they entered the United States not to be subjects or citizens of such country, and such country refuses to permit their reentry, or imposes any condition upon permitting reentry, then to the country of which such aliens are subjects or citizens, or to the country in which they resided prior to entering the country from which they entered the United States. * * * "

Moreover, "The right of the Secretary to deport aliens to the country of nativity or citizenship rather than to the country from which the aliens last entered the United States is unquestioned," United States v. McCandless (C. C. A. 3) 47 F.(2d) 683, 684; and "It is questionable whether the option of the Secretary of Labor as to the place of deportation [is] subject to review," United States ex rel. La Buda v. Karnuth (D. C.) 47 F.(2d) 944, 945, affirmed (C. C. A. 2) 47 F.(2d) 945. See also, Lazzaro v. Weedin (C. C. A. 9) 4 F.(2d) 704. We might add that it is also questionable, in our opinion, whether, under the immigration laws, an alien may be deported from the continental United States to an insular possession of the United States.

Affirmed.