**CHANAN DIN KHAN, Plaintiff,**

v.

**Bruce G. BARBER, District Director, United States Immigration and Naturalization Service, Defendant.**

**Civ. No. 7447.**

United States District Court
N. D. California, N. D.
Jan. 31, 1957.

Colley & Sakuma, Sacramento, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

By this action, plaintiff, a resident alien, seeks a judicial declaration that a deportation order issued by defendant in June, 1956, is invalid. All administrative remedies having been exhausted, jurisdiction in this Court obtains under the provisions of § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009.

The deportation order was based on the provisions of Title 8, U.S.C.A., § 1251

(a) (4),[1] plaintiff having been convicted in 1952 on two counts of income tax evasion under § 145(b) of the Internal Revenue Code of 1939.[2]

The order of deportation can be sustained only if it is determined that:

(1) The crime of wilfully attempting to evade income tax liability under § 145(b), supra, is a crime involving "moral turpitude," and

(2) Conviction at a single trial on two separate counts of income tax evasion under § 145(b), supra, was in fact a conviction of two crimes "not arising out of a single scheme of criminal misconduct."

Before discussing the question of "moral turpitude," the Court feels obliged first to examine the two offenses of which plaintiff was convicted (i.e., wilfully attempting to evade the payment of income tax for each of the years 1946 and 1947), and determine whether such offenses arose out of a "single scheme of criminal misconduct."

No authorities having been cited by the parties, and none having been found, to assist in interpreting the language in § 1251(a) (4), supra, the question appears to be one of first impression. In 1952 Congress wrought a change in the definition of a deportable convicted alien. Prior to the 1952 Act, under the applicable provisions of former § 155(a), (Title 8, U.S.C.A.), in order to be deportable for crimes involving moral turpitude committed at any time after entry, the alien must have been twice sentenced to a term of imprisonment in excess of one year. This section, as it thus read, was interpreted to mean that the alien must have been convicted and sentenced on two separate occasions, and not in one trial, Fong Haw Tan v. Phelan, 333 U.S. 6, 68 S.Ct. 374, 92 L.Ed. 433. See also Jordan v. De George, 341 U.S. 223, 71 S. Ct. 703, 95 L.Ed. 886. However, in 1952, for reasons not made clear in the bill itself, or even in the Committee reports,[3] Congress modified the language of this section to such an extent that an alien becomes deportable if he is merely twice convicted of crimes involving moral turpitude, whether the two convictions are in one trial or separate trials, and whether the alien is sentenced to a term of imprisonment as a result of such convictions. The language of the modification with which, as has already been noted, we are here concerned is the proviso that the two convictions cannot be for crimes "arising out of a single scheme of criminal misconduct."

Plaintiff contends that two violations of § 145(b) of the Internal Revenue Code of 1939, committed in consecutive years, manifests but a "single scheme"; the single scheme being, "to evade and defeat the federal income tax."

1. Title 8, U.S.C.A., § 1251(a) (4) provides:
   "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who— * * *
   "(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial;"

2. Title 26, U.S.C.A., § 145(b) (1939 Code) provides:

   "Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

3. Senate Report No. 1137, Jan. 29, 1952 (S. 2550); House Report No. 1365, Feb. 14, 1952 (H.R. 5678); and Conference Report No. 2096, June 9, 1952 (H.R. 5678).

While it is true that many separate offenses may be committed by an individual in the furtherance of some subjective predeliction amounting to a general scheme of criminality, to hold that a mere lurking propensity to commit certain kinds of offenses manifests a "single scheme" within the meaning of § 1251 (a) (4), would be, in effect, to render nugatory a declared public policy to deport aliens who are convicted of two crimes involving moral turpitude. A more reasonable and rational interpretation of this language is that Congress contemplated nothing more than those situations where an alien's conviction is based on a multiple count indictment charging him with separate crimes, which were committed by the doing of a single act or a series of simultaneous or closely related and closely connected acts.[4]

■■ . The law is well established that a wilful attempt to evade the federal income tax under § 145(b) is a separate crime for each year such an attempt is made, and the offense is not a continuing one, Norwitt v. United States, 9 Cir., 195 F.2d 127, certiorari denied 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 635. Plaintiff, in the case at bar, was convicted of wilfully attempting to evade the payment of income tax for the year 1946, and for committing the same offense twelve months later in connection with income tax due for 1947. Plaintiff's hidden desire to defraud the government of its taxes does not render the two separate acts, which he committed in furtherance of that desire, part of a "single scheme" within the reasonable and rational meaning of the phrase in § 1251 (a) (4), being here considered. The Court is of the view that these two offenses more logically imply that plaintiff, in March of 1948 (when the 1947 tax was

due), decided that his apparent success twelve months earlier warranted repetition. Two such separate and unrelated acts do not amount to a "single scheme of criminal misconduct." To reach a contrary conclusion would require the Court to assume that in 1947 (when the 1946 taxes were payable), defendant had then a fixed intention to commit another violation in 1948 as a part of a single scheme, and this frankly taxes the Court's credulity beyond the pale of reason.

■ Numerous attempts have been made to define what crimes involve "moral turpitude" for the purposes of determining whether an alien falls within the deportable classification set forth in § 1251(a) (4) of the 1952 Act, and § 155 (a) of the prior act. Unquestionably the most helpful definition yet offered was given in the case of Jordan v. De George, supra, 341 U.S. at page 232, 71 S.Ct. at page 708, wherein it was stated:

"Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. * * * Fraud is the touchstone by which this case should be judged. The phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct."

The final question to be resolved is whether a violation of § 145(b) of the Internal Revenue Code of 1939 is a crime involving moral turpitude, as that phrase has been defined above by the Supreme Court.

Section 145(b) speaks in terms of "wilfulness", which has been defined by the

4. E. g.: Title 18, U.S.C.A., § 371 (conspiracy and the doing of an overt act); and see also 18, U.S.C.A., § 487 (counterfeiting, making and possessing dies); § 500 (forging and uttering a postal money order); § 641 (theft and possession of government property); and § 659 (theft and possession from an interstate shipment).

Although the Court is not bound by the statutory interpretations of the Board of Immigration Appeals, that body has placed a similar interpretation on this language. See: B. I. A., In the Matter of D—, Interim Decision No. 583, April 7, 1954; and Auerbach, Immigration Laws of the United States (1955), at page 132, et seq.

Courts as meaning "bad faith", "bad purpose", "evil motive" and "tax evasion motive," United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418; Wardlaw v. United States, 5 Cir., 203 F.2d 884. With these definitions in mind, the Courts have, with apparent unanimity, held that in order for a conviction under § 145(b) to stand, the Government is required to prove that the evading taxpayer had a specific intent to evade taxation, *amounting to an intent to defraud the United States.*[5] Fraud is so inextricably woven into the term, "wilfully" as it is employed in § 145(b), that it is clearly an ingredient of the offense proscribed by that section. Only by creating unwarranted semantic distinctions could a contrary conclusion be reached.

■ Similar tax offenses have been held to involve "moral turpitude," Jordan v. De George, supra; United States ex rel. Berlandi v. Reimer, 2 Cir., 113 F.2d 429; and Maita v. Haff, 9 Cir., 116 F.2d 337,[6] and the court is of the opinion

that the crime set forth in § 145(b) squarely falls within the definition of moral turpitude laid down by the Supreme Court in Jordan v. De George, supra. If proof tantamount to a showing of a specific intent to defraud is *required to convict* a man under § 145(b), then it cannot be said with any degree of consistency and logic that the crime involves *no fraud* for the purposes of deportation.

It is, therefore, ordered that plaintiff take nothing by his complaint on file in this action and that no order of restraint be issued against defendant in this case.

It is further ordered that plaintiff's prayer that the order of deportation issued by defendant against plaintiff be declared null and void be, and it is, hereby denied.

And it is further ordered that the defendant prepare findings of fact and conclusions of law, a form of judgment, and any other required documents, and lodge them with the Clerk of this Court pursuant to the applicable laws and the rules of this Court.

5. United States v. Rosenblum, 7 Cir., 176 F.2d 321, certiorari denied 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548; United States v. Raub, 7 Cir., 177 F.2d 312; Norwitt v. United States, supra [main text]; Wardlaw v. United States, 203 F.2d 884; Bloch v. United States, 9 Cir., 221 F.2d 786; Legatos v. United States, 9 Cir., 222 F.2d 678; and United States v. Clark, D.C., 123 F.Supp. 608. Cf. Berra v. United States, 351 U.S. 131, at page 134, 76 S.Ct. 685, at page 687, 100 L.Ed. 1013.

Plaintiff contends that the case of United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917, is determinative of the issue of whether fraud is an element in § 145(b). A close examination of that case, however, discloses that the Supreme Court decided only that in

order for the government to avail itself of the 6-year statute of limitations for fraud actions, the statute under which it was prosecuting must be specifically couched in terms of fraud. Moreover, the recent case of Berra v. United States, supra, sheds considerable doubt on plaintiff's interpretation of the Scharton case.

6. The Court does not find the case of United States v. Carrollo, D.C., 30 F. Supp. 3, persuasive on this point in view of the conclusion reached by the Supreme Court in Jordan v. De George, supra. The question of fraud as an element of moral turpitude was not reached in the Carrollo case, and the holding that income tax evasion did not involve moral turpitude was no more than a dictum.